UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KK, LLC and W. R. KELSO CO., INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 1:02-cv-1992-TAB-RLY |
| ) | |
| UNITED STATES AVIATION ) | |
| UNDERWRITERS, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction.**

A routine inspection of an airplane owned by KK, LLC and leased to W. R. Kelso Co., Inc. (collectively "Kelso") discovered damage that made the airplane unsafe to fly. Kelso promptly submitted a claim for the damage to its insurance carrier, United States Aviation Underwriters, Inc. ("USAU"). The parties did not see eye-to-eye regarding the coverage provided by the policy. Thus, Kelso filed the instant action claiming breach of contract and bad faith. USAU seeks summary judgment on both of these claims.[1] After Kelso filed this lawsuit,

---

[1]Kelso's complaint also contains a third count that is not really a cause of action at all. Pursuant to the policy, if the parties cannot agree on the amount of loss to the airplane, either side can request in writing that the dispute be submitted for arbitration. [Def.'s Ex. C, p. 39]. Kelso uses Count III of its second amended complaint as the vehicle to request such arbitration, but only if the Court finds that Counts I and II "are not a coverage dispute," but "a dispute as to the amount of loss to the aircraft falling under the Arbitration of Disputes Provision of the Insurance Contract." [Docket No. 36, pp. 3-4]. The Court makes no such finding. As noted above, USAU seeks summary judgment only with respect to Counts I and II. However, Kelso's third count fails to state a claim upon which relief can be granted. Accordingly, Count III is dismissed without prejudice. See Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) ("Sua sponte 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading.").

the airplane at issue was repossessed before Kelso made any out-of-pocket expenditures for its repair.  According to USAU, this subsequent extraneous event entitles USAU to summary judgment -- at least on the coverage dispute issue.  As for the remaining claims, USAU argues that the policy specifically excludes Kelso's consequential damages claim and that there is no evidence of bad faith on the part of USAU.  For the reasons that follow, the Court agrees.

**II.     Standard and Applicable Law.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Illinois Cent. R. Co. v. South Tec Development Warehouse, Inc., 337 F.3d 813, 816 (7th Cir. 2003).  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.'"  Fritcher v. Health Care Service Corp., 301 F.3d 811, 815 (7th Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court construes all facts and draws all reasonable inferences in the light most favorable to the non-moving party. Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth

specific facts showing that there is a genuine issue for trial.  See Michael v. St. Joseph County, 259 F.3d 842, 845 (7th Cir. 2001).  To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts.  See Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001).  A scintilla of evidence in support of the non-movant's position is not sufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

      As this matter comes before the Court pursuant to diversity jurisdiction, the Court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal."  State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001).  Because neither party raised a conflict of law issue, the applicable law is that of Indiana, the state where this Court sits.  Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8, 314 F.3d 895, 900 (7th Cir. 2002).  See also Wood v. Mid-Valley Inc., 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).")  "Under Indiana law, the interpretation of an insurance contract is a matter of law for the courts to determine."  Schenkel & Shultz, Inc. v. Homestead Ins. Co., 119 F.3d 548, 550 (7th Cir. 1997), citing Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992).  Therefore, summary judgment is particularly appropriate.  American Family Mut. Ins. Co. v. Hall, 764 N.E.2d 780, 784 (Ind. Ct. App. 2002).  "Although ambiguities are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning."  Colonial

3

Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997).

**III.    Background.**[2]

USAU issued an insurance policy (the "policy") to Kelso effective May 16, 2001 through May 16, 2002.  The policy included, among other things, "Physical Damage Coverage" to Kelso for its airplane, a 1979 Cessna Citation II.  [Def.'s Ex. C; William Kelso Aff., ¶ 2].  During a routine inspection of the airplane on March 19, 2002, Premier Air Center ("Premier") discovered scoring damage to certain critical parts, rendering the airplane unsafe for flight.  [William Kelso Aff., ¶ 3; Def.'s Ex. D].  Thereafter, on March 28, 2002, Kelso provided notice of a claim under the policy for the damage discovered by Premier.  [William Kelso Aff., ¶ 4; Def.'s Ex. D].  In response to the claim, USAU retained Materials Analysis, Inc. to conduct an inspection of the damage to the airplane.  Materials Analysis, Inc.'s inspection concluded that, while the scoring damage to the aircraft probably occurred during preparation for painting at Hill Aero in 1998, there also existed corrosion damage that "was well underway prior to any seam scoring damage." [Def.'s Ex. E, pp. 1-5].

Based on the findings of Materials Analysis, Inc., USAU advised Kelso that it would pay to replace parts which were scored beyond the manufacturer's structural repair limits, but it would not cover the cost of the replacement of any parts affected by corrosion because of the Wear-Tear exclusion contained in the policy.  [Def.'s Ex. F].  The estimate for the total cost of repairs, including repair of the scoring and corrosion damage, was approximately $237,000.

---

[2]The facts are either undisputed or viewed in a light most favorable to Kelso.  In addition, this background section is a brief overview of the facts and is not meant to be an exhaustive recitation of all material facts in this case.

[Def.'s Ex. G]. On August 1, 2002, USAU advised Kelso that it would pay $137,741.46 for the covered damage that was not caused by corrosion. [Def.'s Ex. H]. Thereafter, on November 26, 2002, USAU paid directly to Premier $105,788.46 for the airplane's repair.[3] [William Kelso Aff., ¶ 22].

KK, LLC financed the purchase of the airplane through FirstMerit Bank. [William Kelso Aff., ¶¶ 35-38]. At the time that Premier discovered the damage, KK, LLC was current on its obligations to FirstMerit. However sometime thereafter, KK, LLC defaulted on the loan. On December 23, 2002, FirstMerit filed a complaint to repossess the airplane and on September 19, 2003 FirstMerit obtained a judgment in its favor. [William Kelso Aff., ¶¶ 24, 35-38; Def.'s Ex. I]. Thereafter, FirstMerit repossessed the airplane. However, Kelso is unsure as to the specific date of the repossession. [William Kelso Dep., pp. 24-26]. In any event, Kelso did not have knowledge of the repossession prior to March 24, 2004. [William Kelso Aff., ¶49]. Kelso did not repair the airplane before FirstMerit repossessed it. [Def.'s Ex. J, p. 39; William Kelso Aff., ¶ 51].

**IV.   Discussion.**

    **A.   Policy Coverage.**

Kelso first claims that USAU breached its contract with Kelso to provide insurance coverage on the airplane. Specifically, Kelso claims that USAU arbitrarily refused to pay for repairs to the airplane that were covered by the policy. As a general matter, USAU contends that

---

[3] The record is unclear as to why the amount paid to Premier differs from the amount originally promised. However, this is not a material issue in this case.

the Wear-Tear policy provision excludes coverage of the corrosion damage to the airplane. However, USAU concedes that the "issue of whether the Wear-Tear Exclusion operates to exclude the corrosion damage in this case involves a question of fact." [Docket No. 62, p. 2]. Accordingly, USAU does not seek summary judgment on that issue. Instead, USAU argues that it is entitled to summary judgment with respect to Kelso's breach of contract claim because Kelso never paid for or had repairs made to the airplane before its repossession by FirstMerit. Thus, Kelso did not incur an insurable loss. [Docket No. 62, p. 2]. For the reasons stated below, the Court agrees with USAU.

In relevant part, the policy's provision for Physical Damage Coverage provides the following:

> **Partial loss - you make repairs.** If the aircraft is only partially damaged and *you make repairs*, we'll reimburse you for the following items less any deductible that applies:
>
> > The cost of necessary materials and parts of a similar kind and quality.
>
> * * *
>
> **Partial loss - someone else makes repairs.** If your aircraft is damaged *and the repairs are made by someone else*, we'll pay you the following, less any deductible that applies:
>
> > The net cost to you of repairing your aircraft with material and parts of similar kind and quality.

[Def.'s Ex. C, p. 39]. In a nutshell, USAU argues that pursuant to this clear and unambiguous policy language, Kelso has not incurred an insurable loss because it did not incur any out-of-pocket costs associated with the repair of the airplane. Thus, USAU argues, there is nothing to reimburse. The Court agrees.

As noted by USAU in reply, Kelso "provided <u>no</u> legal or factual support in its response to USAU's Motion for Summary Judgment." [Docket No. 82, p. 1]. For that reason alone,

USAU is entitled to summary judgment, provided USAU's motion is otherwise well taken and supported by admissible evidence.  See Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.  In short, '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (citations omitted); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").  With respect to its coverage claim, Kelso failed to cite or discuss relevant policy language or case law that would allow the Court to infer that a question of material fact exists.  Instead, without citation to admissible evidence, Kelso merely asserts that, after repossessing the airplane, FirstMerit repaired the airplane and obtained a judgment against Kelso for the cost of those repairs.  Thus, Kelso argues, Kelso "incurred an actual loss in the nature of a Judgment for those repair costs and, therefore, Defendant should be responsible to pay those repair costs."  [Docket No. 80, p. 8].  If this were true, then Kelso might have a cognizable claim.  However, nothing, other than Kelso's bald assertion, allows the Court to infer such a conclusion.  In addition, Kelso's deficiencies aside, USAU's arguments on this issue are well taken.  See Docket No. 62, pp. 5-7; Docket No. 82, 2-4.  Accordingly, USAU is entitled to summary judgment on Count I of Kelso's second amended complaint.

### B. Consequential Damages.

Kelso also seeks consequential damages relating to USAU's alleged failure to timely repair the airplane.  The Court's ruling with respect to Count I does not necessarily foreclose Kelso's ability to prevail on its claim for consequential damages.  Indeed, the Court's grant of summary judgment with respect to Count I of Kelso's complaint rests exclusively on the fact that

there is no evidence to show that Kelso suffered an insurable loss due to the subsequent repossession of the airplane. However, with respect to its consequential damages claim, Kelso argues that USAU's delay directly caused the foreclosure on, and repossession of, the airplane. Thus Kelso seeks, among other things, damages for loss of revenue and loss of use of the airplane. Nonetheless, USAU seeks summary judgment on this issue, arguing that the policy specifically excludes coverage for consequential damages and that Indiana law precludes such a recovery. While USAU's statement of the law in this regard is not entirely correct, USAU's motion for summary judgment with respect to Kelso's claim for consequential damages is granted for the reasons stated below.

First and foremost, despite USAU's allusions to the contrary, Indiana law allows claims for consequential damages proximately caused by the delay in settling an insurance claim, when denial of the claim results in a breach of the insurance contract.[4]  Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc., 590 N.E.2d 1085, 1091-92 (Ind. Ct. App. 1992). Unlike "bad faith" punitive damages claims, such claims may proceed regardless of the insurer's state of mind. See id. at 1092 n.6 ("Simply put, the insurer cannot look at an insured's loss of livelihood and loss of home, shrug its shoulders, and hide behind the fact it made an 'honest mistake.' Delay, whether in good or bad faith, has clearly foreseeable consequences."). But see Burleson v. Illinois Farmers Ins. Co., 725 F. Supp. 1489, 1490-98 (S.D. Ind. 1989) (predicting that Indiana

---

[4] Although the Court ultimately concludes that Kelso cannot recover consequential damages under the facts of this case, USAU's reliance on Aetna Life & Casualty v. Patrick Industries, Inc., 645 N.E.2d 656 (Ind. Ct. App. 1995), for the proposition that Indiana law prohibits such damages is misplaced. Unlike the case at bar, the consequential damages at issue in Aetna were not caused by the insurer's own alleged breach of contract, but were instead consequential to the insured loss. Thus, Aetna is inapplicable to the instant matter.

law would allow consequential damages only in bad faith breach of contract actions). However, as explained below, the fact that Indiana allows consequential damages under certain circumstances when an insurer breaches its contract with an insured does not mean that Kelso necessarily survives summary judgment on this issue.

Under its exclusions, the policy states: "Consequential damage. We will not cover any loss of use or any residual depreciation in value of the aircraft, either before or after repairs have been made." [Def.'s Ex. C, p. 12]. According to USAU, this language specifically excludes the damages sought by Kelso. Kelso seemingly concedes this point, arguing instead "that despite any language in the policy to the contrary, it is entitled to recover consequential damages when those consequential damages occur as a result of unconscionable actions in bad faith on behalf of Defendant." [Docket No. 80, p. 9]. Thus, Kelso's argument on consequential damages appears to be one of bad faith, rather than consequential damages arising from an honest mistake. Nonetheless, as explained below, any claim for honest mistake or good faith consequential damages is barred under the facts of this case.

"Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties." Trimble v. Ameritech Publishing, Inc., 700 N.E.2d 1128, 1129 (Ind. 1998). Moreover, "[i]n the absence of legislation, a party may contract out of his duty to exercise reasonable care with respect to the other party and thereby exonerate himself of liability to the other for negligence without offending the public policy of the state. This may be done by an exculpatory clause or an express agreement from the other party to release the promisee from his duty or to assume the risk." Pinnacle Computer Services, Inc. v. Ameritech Pub., Inc., 642 N.E.2d 1011, 1014 (Ind.

Ct. App. 1994) (internal citations omitted).  Finally, "'[a]lthough some special rules of construction of insurance contracts have developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning.'"  Imre v. Lake States, Ins. Co., 803 N.E.2d 1126, 1130 (Ind. Ct. App. 2004), quoting Beam v. Wausau Ins. Co., 765 N.E.2d 524, 527 (Ind. 2002).

    Here, the Court finds that the policy's exclusion regarding consequential damages is clear and unambiguous.  Moreover, the Court concludes that the consequential damages exclusion covers the damages sought by Kelso in the instant matter.  Nonetheless, Kelso requests that the Court void the provision as unconscionable.[5]  Indiana courts have declined to enforce private agreements under certain circumstances, namely when the agreement: (1) contravenes statute; (2) clearly tends to injure the public in some way; or (3) is contrary to the declared public policy of Indiana.  Trotter v. Nelson, 684 N.E.2d 1150, 1153 (Ind. 1997).  Kelso does not argue -- and the Court does not find  -- that any of these situations exist.  Rather than attacking the validity of the provision itself, Kelso questions USAU's actions subsequent to Kelso's claim submission.

---

[5] Both parties frame this issue as whether the consequential damages exclusion is unconscionable, citing to the Uniform Commercial Code ("UCC").  See Docket No. 80, p. 10; Docket No. 82, pp. 5-6.  However, the sale of insurance is not a sale of "goods" as defined by the UCC.  Ind. Code § 26-1-2-105(1).  See also Jones v. CGU Ins. Co., 78 S.W.3d 626, 629 (Tex. App. 2002) ("The sale of an insurance policy does not constitute the sale of 'goods' within the meaning of title 2 of the UCC."); Nielsen v. United Services Auto. Ass'n, 612 N.E.2d 526, 531 (Ill. App. Ct. 1993) ("the UCC does not apply to insurance contracts because insurance contracts are not for the sale of 'goods.'").

Kelso's argument in this regard goes more toward its bad faith claim. As noted above, exculpatory clauses are not necessarily violative of public policy. In addition, "[a]n unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. Weidman v. Erie Ins. Group, 745 N.E.2d 292, 297 (Ind. Ct. App. 2001). Accordingly, Kelso's claim for consequential damages, to the extent it is based on USAU's good faith actions, must fail.

However, this finding does not end the inquiry, for Indiana law does not allow parties to contract away intentional harm. See Tippmann v. Hensler, 716 N.E. 2d 372, 380 (Ind. 1999) ("'Indiana generally denies the ability to insure against or waive liability for intentional torts.'") (citation omitted); Clark v. Donahue, 885 F. Supp. 1159, 1163 (S.D. Ind. 1995) ("exculpatory clauses are generally not construed to cover anything more than mere negligence") (applying Indiana law). Thus, to the extent Kelso claims consequential damages as a result of USAU's bad faith, that claim merges with Kelso's claim for punitive damages for USAU's alleged breach of the duty to deal with its insureds in good faith. The Court address that issue below.

## C. Breach of Duty to Deal in Good Faith and Punitive Damages.

Count II of Kelso's second amended complaint makes a claim for punitive damages, which the Court interprets as a claim for breach of the duty of an insurance company to deal with its insured in good faith under Indiana common law. Indiana courts have described the standard for bad faith claims as follows:

> Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 40 (Ind. 2002) (citing Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 518 (Ind. 1993)). This obligation of good faith and fair dealing includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an

11

insured into settlement of his claim. Erie, 622 N.E.2d at 519. A cause of action will not arise every time an insurance claim is denied. Freidline at 40. A good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. Id. However, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. Id. To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. Id. Tort damages for the breach of the duty to exercise good faith will, in most instances, be coterminous with those recoverable in a breach of contract action. Erie, 622 N.E.2d at 520.

Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co., 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). In Indiana, punitive damages may be based upon a claim for the breach of an insurer's obligation to exercise good faith with respect to its insured. Id. However, the standard is somewhat higher, as "proof that a tort was committed is not sufficient to establish the right to punitive damages." Id. "Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." Id. While perhaps incorrect, USAU had a rational basis for denial of Kelso's claim. Accordingly summary judgment is appropriate.[6]

In partially denying Kelso's claim for damage, USAU relied on the Wear-Tear exclusion found in the policy. That provision provides, in relevant part, as follows:

> Wear-tear. We won't cover loss or damage to your aircraft caused by and confined to wear and tear, deterioration, freezing, mechanical or electrical breakdown or failure unless the loss is the direct result of other physical damage covered under this policy.
>
> For example, if the windshield of your aircraft cracked [by] freezing, we won't pay for the windshield. However, if the cracked windshield is responsible for having an

---

[6]The Indiana Supreme Court has expressly held that a court may resolve a punitive damage bad faith claim at the summary judgment stage. USA Live One Ins. Co. of Indiana v. Nuckolls, 682 N.E.2d 534, 541 (Ind. 1997).

accident, [we will] pay for the resulting damage to your aircraft.

[Def.'s Ex. C, p. 40].  This Wear-Tear exclusion is not the most artfully crafted provision, and could render multiple interpretations.  In determining whether the corrosion damage falls within this exclusion, i.e. whether the damage is actually covered by the policy, any ambiguities are construed in Kelso's favor.  Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997).  However, this is not necessarily the case when determining whether an insurance company acted in bad faith.  "A good faith dispute about the amount of a valid claim or whether the insured has a valid claim at all will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith.  'This is so even if it is ultimately determined that the insured breached its contract.'"  Hoosier Ins. Co. v. Audiology Foundation of America, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001).  Unfortunately, neither party focuses on the policy's language in their discussions of whether USAU breached its duty to deal in good faith.

For its part, USAU argues that it relied on the report of an expert, which concluded that, with respect to the skin seam damage on the airplane, the corrosion pre-dated any scoring damage.  Thus, USAU concluded that any parts damaged by corrosion were excluded from coverage by the Wear-Tear exclusion, regardless of later scoring damage.  Moreover, USAU asserts that it steadfastly maintained its position throughout the claims process.  In contrast, Kelso essentially argues that USAU's expert got it wrong.  Relying on its own expert's report, Kelso contends that the corrosion was actually caused by the scoring and therefore covered by the policy.  As noted by USAU, "[t]he only thing these facts prove is that there is a coverage dispute between USAU and Kelso regarding the corrosion damage."  [Docket No. 82, p. 6].

It is not enough to prove that USAU wrongfully denied Kelso's claim.  "'[A] finding of

13

bad faith requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will.'  Poor judgment and negligence, therefore, do not amount to bad faith; the additional element of conscious wrongdoing must be present." Spencer v. Bridgewater, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001) (citations omitted).  See also Hoosier Ins. Co. v. Audiology Foundation of America, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) ("A good faith dispute about . . . whether the insured has a valid claim at all will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith.  'This is so even if it is ultimately determined that the insured breached its contract.'") (citations omitted).  Kelso failed to demonstrate that USAU acted with the requisite state of mind in denying coverage.  Accordingly, Kelso's bad faith claim, and thus its claims for consequential and punitive damages, fail.[7]

---

[7]Without argument, Kelso identifies several "facts" that it claims establish bad faith.  For example, Kelso proffers that USAU: (1) refused to pay actual damages because they were paid by a third party, presumably FirstMerit; (2) accused Kelso of "causing all this" to obtain a free paint job; (3) took conflicting positions regarding mitigation and spoliation; (4) accused Kelso of spoliation after it initiated repairs; (5) "said spoliation precluded a fourth inspection of the aircraft when [USAU] had 16 months to perform an inspection and did nothing;" and (5) "forced Kelso to negotiate for a period of 19 months." [Docket No. 80, p. 11].  In large part, Kelso's argument in this regard revolves around USAU's litigation position.  It is, therefore, irrelevant to the issue of whether USAU acted in bad faith when it denied Kelso's claim.  See Gooch v. State v. State Farm Mut. Auto Ins. Co., 712 N.E.2d 38, 41-43 (Ind. Ct. App. 1999) (describing when post-litigation conduct might be relevant to a bad faith claim).

V.      **Conclusion.**

USAU's motion for summary judgment [Docket No. 61] is GRANTED.  Accordingly, Counts I and II of Kelso's second amended complaint are dismissed with prejudice.  In addition, the Court, sua sponte, dismisses Count III of Kelso's second amended complaint for failure to state a claim upon which relief can be granted.  Final judgment shall be entered accordingly.  All other pending motions are denied as moot.  Costs are awarded to the Defendant.

SO ORDERED.  Dated:  05/06/2005

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Patrick C. Badell
BADELL & WILSON
bwlaw@bwlawoffice.com

Bruce M. Lichtcsien
COZEN O'CONNOR
blichtcsien@cozen.com

Matthew T. Walsh
COZEN O'CONNOR
mwalsh@cozen.com

Ronald L. Wilson
BADELL & WILSON
bwlaw@bwlawoffice.com